**Herman RESNICK, Petitioner,**

**v.**

**M. ADAMS, Warden, United States Penitentiary,[1] Respondent.**

**No. CV 98–3277–MMM (RC).**

United States District Court, C.D. California.

Feb. 17, 1999.

---

1.  M. Adams is substituted as respondent for    W. Scott, pursuant to Fed.R.Civ.P. 25(d).

Herman Resnick, Lompoc, CA, pro se.

Lawrence Ng, Asst. U.S. Atty., Los Angeles, CA, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MORROW, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Margaret M. Morrow, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On December 2, 1996, in the United States District Court for the Northern District of California, petitioner Herman Resnick pleaded guilty to, and was convicted of, one count of bank larceny in violation of 18 U.S.C. § 2113(b). Return, Exh. A at 14. On August 13, 1997, petitioner was sentenced to 103 months in federal prison and three years of supervised custody upon his release. Return, Exh. G.

Following his guilty plea, and while awaiting sentencing, petitioner was incarcerated in the Federal Detention Center ("FDC") at Dublin, California. *See,* Return, Exh. B. A routine drug screening conducted on March 16, 1997, detected the presence of morphine in petitioner's urine.[2] *Id.,* at 35. An "Incident Report" was prepared, charging petitioner with narcotics use in violation of Code 109 of 28 C.F.R. § 541.13,[3] and the incident was referred for further proceedings. *Id.,* at 33.

The petitioner was given advanced written notice that a hearing would be conducted on the disciplinary charge, and of the hearing date and an explanation of his rights. Return, Exh. C. The disciplinary hearing took place on April 8, 1997. Return, Exh. D. The petitioner waived his right to a staff representative and to call and cross-examine witnesses; he provided a statement denying the charges and claiming the urine sample was not his but was mislabeled. *Id.,* at 38. The laborato-

ry report and evidence of chain of custody on the sample, signed by petitioner, were admitted into evidence, and it was on this evidence that petitioner was found guilty of the charged violation. *Id.,* at 39–40. The petitioner was disciplined by placing him in disciplinary segregation for 30 days, the loss of visiting privileges for 365 days, and the disallowance of 27 days "good conduct time to be taken in [sic] [petitioner] become[s] a sentenced Federal inmate...." *Id.,* at 39–40, Exh. E. The petitioner appealed the decision to the Regional Director of the Bureau of Prisons ("BOP") and the National Inmate Appeals Administrator, and both of the appeals were denied. Petition, Exhs. 3, 4; Return, Exh. F at 44–45, 47.

### II

On December 8, 1997, petitioner filed the instant habeas corpus petition in the United States District Court for the Northern District of California, alleging that 27 days of good time credit were unlawfully taken from him and should be restored. Due to petitioner's transfer to the United States Penitentiary ("USP") at Lompoc, California, this action was transferred on April 29, 1998, to the United States District Court for the Central District of California. The respondent filed a return on July 13, 1998. The petitioner filed a traverse on July 22, 1998.

The petitioner contends he was wrongfully denied 27 days of "good time" credit as a disciplinary sanction for violating a prison regulation during his pretrial incarceration at FDC.[4] According to petitioner,

---

**2.** The petitioner has a long history of heroin addiction and alcohol abuse. Return, Exh. A at 24.

**3.** Code 109 prohibits the "[p]ossession, introduction, or use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff." 28 C.F.R. § 541.13, Table 3, Code 109.

**4.** The petitioner does not claim that BOP denied him the procedural protections constitutionally required by *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In *Wolff,* the Supreme

Court held that, because prison disciplinary hearings are not criminal prosecutions, the full panoply of rights due the criminal defendant do not apply. *Wolff,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Even so, an inmate has certain due process rights in such proceedings: (1) written notice of the charges must be given to the inmate to inform him of the charges and to enable him to marshal the facts and prepare a defense; (2) after written notice is given, not less than 24 hours should be allowed for the inmate to prepare for the hearing; (3) there must be a written statement by the fact finder as to the evidence relied upon and the reasons for the

because the disciplinary violation occurred while he was a pretrial detainee, and not a sentenced prisoner, and because pretrial detainees cannot earn good time credit, any disallowance of good time credit would have to be "held in abeyance" and then imposed once he earned the good time credit as a sentenced prisoner; accordingly, BOP is without authority to impose, and due process prohibits, such a prospective sanction. Petition, at 3–4.

## III

Authority for administering the federal prison system has been delegated by Congress to the Bureau of Prisons ("BOP"). 18 U.S.C. § 4042; 28 C.F.R. § 500 et seq.; *McCarthy v. Madigan,* 503 U.S. 140, 148, 112 S.Ct. 1081, 1088, 117 L.Ed.2d 291 (1992). This delegation of authority includes the duty to protect inmates from harm and to ensure a safe and orderly prison environment. 18 U.S.C. § 4042(a)(3). Further, the Director of BOP has been delegated the authority to promulgate rules that govern the control and management of the federal prisons. 28 C.F.R. § 0.96(p); *Webber v. Crabtree,* 158 F.3d 460, 461 (9th Cir.1998). "[A]ll persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons are subject to these rules." 28 C.F.R. § 541.10(a); *Hagan v. Tirado,* 896 F.Supp. 990, 993 (C.D.Cal. 1995). Such persons include pretrial detainees. *Reno v. Koray,* 515 U.S. 50, 63, 115 S.Ct. 2021, 2028, 132 L.Ed.2d 46 (1995); *see also Bell v. Wolfish,* 441 U.S. 520, 546–47 & n. 28, 99 S.Ct. 1861, 1877–78 & n. 28, 60 L.Ed.2d 447 (1979) (recognizing lack of distinction between pretrial detainees and convicted inmates regarding regulations governing prison security).

■ Pretrial detainees may not be punished by prison officials for the crime that led to their detention.[5] *Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1873–74. They may, however, be disciplined or punished for misconduct they commit in prison while awaiting either trial or sentencing. *Mitchell v. Dupnik,* 75 F.3d 517, 524 (9th Cir. 1996); *Collazo–Leon v. United States Bureau of Prisons,* 51 F.3d 315, 317 (1st Cir.1995). "In other words, reasonable punishment may be imposed to enforce reasonable prison disciplinary requirements but may not be imposed to sanction prior unproven criminal conduct." *Collazo–Leon,* 51 F.3d at 318. Imposing sanctions on a pretrial detainee for misconduct committed during his incarceration "is nevertheless constitutional if it also serves some legitimate governmental objective such as addressing a specific institutional violation and is not excessive in light of the seriousness of the violation." *Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1873–74.

■ Maintaining safety, internal order and security within the penal institution is a legitimate governmental objective. *Bell,* 441 U.S. at 540, 99 S.Ct. at 1874. "The administrators of the prison must be free ... to sanction the prison's pretrial detainees for infractions of reasonable prison regulations that address concerns of safety and security within the detention environment." *Collazo–Leon,* 51 F.3d at 318. Prohibiting the use of narcotics by a prison inmate is a reasonable prohibition designed to maintain safety and, as such, is rationally related to the legitimate governmental objectives of public safety and institutional security. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see also* 28 C.F.R. § 541.13, Table 3, Code 109.

■ Under federal regulations, the denial of good time credit is one of several sanctions available for disciplining an inmate who violates a prison regulation pro-

---

disciplinary action; (4) the inmate should be allowed to present documentary evidence and to call witnesses when not unduly hazardous to institutional safety or the correctional goals; and (5) an illiterate inmate should be given assistance at the hearing. *Id.* at 564–70, 94 S.Ct. at 2979–82.

**5.** The Court recognizes that petitioner was a "presentence" detainee, rather than a pretrial detainee, as respondent notes; however, the difference is of no consequence here. Return at 1 n. 3.

hibiting the unauthorized use of narcotics.[6] 28 C.F.R. § 541.13(a)(1), Table 3 B.1. Good time credit is provided for by 18 U.S.C. § 3624(b)(1), as follows:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.... [I]f the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive lesser credit as the Bureau determines to be appropriate....

18 U.S.C. § 3624(b)(1). Although pretrial detainees do not automatically earn good time credit, they may be recommended for good time credit for the time spent in pretrial custody. 28 C.F.R. § 523.17(1); *United States v. Payton*, 159 F.3d 49, 61 (2d Cir.1998) "[T]his recommendation shall be considered in the event that the pretrial detainee is later sentenced on the crime for which he or she was in pretrial status." 28 C.F.R. § 523.17(*l*). However, if "the [BOP] determines that, during that year, the prisoner had not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the [BOP] determines to be appropriate." 18 U.S.C. § 3624(b)(1). Thus, as a pretrial detainee, petitioner was eligible to be awarded up to 54 days of good time credit annually, provided he was later sentenced to a prison term exceeding one year on the offense and he satisfactorily complied with institutional regulations. 18 U.S.C. § 3624(b)(1); 28 C.F.R. § 523.17(*l*).[7]

■ Due to his disciplinary violation, petitioner was awarded only 27 days of good time credit, rather than the maximum amount of 54 days he could have received, for the one year period of pretrial incarceration from June 13, 1996, through June 12, 1997. Petition, Exh. 5. This good time credit was awarded on June 27, 1997, prior to the commencement of petitioner's prison sentence. *Id.* Thus, the sanction of 27 days of good time credit was not "held in abeyance" and then used to reduce the amount of credit earned by petitioner during the service of his prison sentence, but was instead used to reduce the amount of additional good time credit earned by petitioner during his pretrial detention.

Because federal pretrial detainees may be punished for prison misconduct by disallowing good time credit, and because petitioner received the process that was due him, the instant petition seeking restoration of 27 days of good time credit lacks merit and must be denied.[8]

---

**6.** Pursuant to 28 C.F.R. § 541.13, the following sanctions are available for disciplining an inmate who violates the rule against narcotics use: (1) recommendation of a parole date rescission or retardation; (2) forfeiture of up to 100% of earned statutory good time credit; (3) termination or disallowance of extra good time credit available for the year; (4) recommendation of a disciplinary transfer; (5) disciplinary segregation for up to 60 days; (6) monetary restitution; (7) withholding of statutory good time credit; and (8) loss of privileges. 28 C.F.R. § 541.13(a)(1), (f) Table 3 A–N.

**7.** This "good time" credit is separate from any additional sentence credits petitioner might receive for the time he spent in "official detention" prior to commencing his sentence. 18 U.S.C. § 3585(b); *Payton*, 159 F.3d at 62–63. Under 18 U.S.C. § 3585, the United States Attorney General (who has delegated this authority to BOP) has authority to determine the appropriate day for day credit for time spent by a pretrial detainee in "official detention" prior the commencement of his sentence. *Reno v. Koray*, 515 U.S. at 55–56, 115 S.Ct. at 2023–24.

**8.** The petitioner also contends that the regulation disallowing good time credit as a disci-

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

plinary sanction was retroactively applied to him because it "came into effect in 1996" and he was arrested on June 14, 1995. Petition at

5. There is no merit to this claim since petitioner's violation of the Code 109 occurred on March 16, 1997.