[No. B124974. Second Dist., Div. Five. Oct. 7, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK EDWARD DORSEY, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the indicated portions of parts I., III. and IV. are certified for publication.

COUNSEL

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Chung L. Mar, and Kerrigan M. Keach, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TURNER, P. J. —**

## I. INTRODUCTION

Defendant, Mark Edward Dorsey, appeals from his convictions for: two counts of kidnapping for robbery (Pen. Code,[1] § 209, subd. (b)); two counts of second degree robbery (§ 211); a single count of attempted second degree robbery (§§ 664, 211); and one count of possession of a firearm by a felon. (§ 12021, subd. (a)(1).) It was also determined that defendant: personally used a firearm in the commission of the kidnappings, robberies, and the attempted robbery (§ 12022.5, subd. (a)(1)); had previously been convicted of a serious felony (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)); and had served a prior prison term. (§ 667.5.) Defendant has received a sentence of two consecutive life terms plus 37 years. Additionally, the trial court imposed a direct victim restitution order pursuant to section 1202.4, subdivision (f). In the published portion of this opinion, we address the question of whether penalty assessments mandated by section 1464, subdivision (a) and Government Code section 76000, subdivision (a) must be added to the direct victim restitution award. We conclude such penalty assessments may not be imposed on a direct victim restitution award.

## II. UNPUBLISHED DISCUSSION*

. . . . . . . . . . . . . . . . . . . . . . . . .

## III. PUBLISHED DISCUSSION

 The trial court imposed an order that defendant make direct restitution to a victim in the sum of $800. The Attorney General argues the $800

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

*See footnote, *ante*, page 729.

direct victim restitution order is subject to the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments. Section 1464, subdivision (a) provides in relevant part, "[T]here shall be levied a state penalty, in an amount equal to ten dollars ($10) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses. . . ." Similarly, Government Code section 76000, subdivision (a) provides in part, "In each county there shall be levied an additional penalty of seven dollars ($7) for every ten dollars ($10) or fraction thereof which shall be collected together with and in the same manner as the amounts established by Section 1464 of the Penal Code, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses . . . ." The Attorney General argues that the failure to impose the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments was jurisdictional error. (*People* v. *Martinez* (1998) 65 Cal.App.4th 1515, 1519 1511 [77 Cal.Rptr.2d 492]; *People* v. *Hong* (1988) 64 Cal.App.4th 1071, 1084 [76 Cal.Rptr.2d 23].) The Attorney General points to our decision in *People* v. *Martinez, supra,* 65 Cal.App.4th at pages 1520-1522, where we held section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments must be added to the laboratory analysis fee imposed in compliance with Health and Safety Code section 11372.5, subdivision (a) in the case of enumerated drug offenses.[2] In a similar vein, the Attorney General argues that direct victim restitution is punishment and thereby falls within the meaning of the term "penalty" as used in section 1464, subdivision (a) and Government Code section 76000, subdivision (a). (E.g., *People* v. *Walker,* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861] [a restitution fine is a "punishment" for purpose of plea negotiations]; *People* v. *Zito* (1992) 8 Cal.App.4th 736, 741 [10 Cal.Rptr.2d 491] [for purposes of ex post facto analysis, direct victim restitution is " 'punishment' "].) In terms of whether section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments must be imposed on direct victim restitution, we, with respect, disagree with the position articulated by the Attorney General.

This is an issue of statutory interpretation. ▮ We apply the following standard of statutory review described by the California Supreme Court:

[2]Health and Safety Code section 11372.5, subdivision (a) states: "Every person who is convicted of a violation of Section 11350, 11351, 11351.5, 11352, 11355, 11358, 11359, 11361, 11363, 11364, 11368, 11375, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, 11382, 11383, 11390, 11391, or 11550 or subdivision (a) or (c) of Section 11357, or subdivision (a) of Section 11360 of this code, or Section 4230 of the Business and Professions Code shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary to include this increment."

"When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) The Supreme Court has emphasized that the words in a statute selected by the Legislature must be given a "commonsense" meaning when it noted: " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 . . . ; *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 . . . .)' (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 597 . . . .)" (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) ■ However, the literal meaning of a statute must be in accord with its purpose as the Supreme Court noted in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' " In *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." The Supreme Court has held: " 'The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 . . . .)" (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Further, the Supreme Court has held: "We have recognized that a wide variety of factors may illuminate the legislative design, ' "such as context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy

and contemporaneous construction." ' (*In re Marriage of Bouquet* [(1976)] 16 Cal.3d 583, 587 . . . quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 . . . .)" (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443].)

■ As mandated by the Supreme Court, we look first to the statutory language to determine if the Legislature intended to require trial judges to impose the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments on direct victim restitution. As noted previously, the statutory language indicates a penalty assessment is to be imposed on "every fine, penalty, or forfeiture imposed *and collected by the courts for criminal offenses* . . . ." (§ 1464, subd. (a); Gov. Code, § 76000, subd. (a), italics added.) The Legislature has explicitly required that the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) assessments be imposed when the penalty is "collected by the courts for criminal offenses." No statute directly authorizes a court in a case where the defendant has been sentenced to prison, to collect direct victim restitution. Section 1202.4, subdivisions (f) and (g) requires the trial court to enter a direct restitution order. They do not require the court to collect the restitution. The Attorney General argues that two provisions of law warrant the legal conclusion that courts in effect "collect" direct restitution within the provisions of Government Code section 76000, subdivision (a) and section 1464, subdivision (a). The Attorney General admits that the actual collection of the direct restitution is performed by the Department of Corrections pursuant to section 2085.5, subdivision (b) where the defendant, in a case such as this, is sentenced to prison. A claim is filed by the victim with the Board of Control which provides: "(b) In any case in which a prisoner owes a restitution order imposed pursuant to subdivision (c) of Section 13967 of the Government Code, as operative prior to September 28, 1994, or subdivision (f) of Section 1202.4, the Director of Corrections shall deduct a minimum of 20 percent or the balance owing on the order amount, whichever is less, up to a maximum of 50 percent from the wages and trust account deposits of a prisoner, unless prohibited by federal law. If the restitution is owed to a person who has filed an application with the Victims of Crime Program, the director shall transfer that amount to the State Board of Control for direct payment to the victim, or payment shall be made to the Restitution Fund to the extent that the victim has received assistance pursuant to that program. No deductions shall be made on behalf of victims who have not filed an application with the Victims of Crime Program. The sentencing court shall be provided a record of the payments made to victims and of the payments deposited to the Restitution Fund pursuant to this subdivision." The Attorney General also cites to a second provision of law concerning direct victim restitution, section 1202.4, subdivision (i) which

states, "A restitution order imposed pursuant to subdivision (f) shall be enforceable as if the order were a civil judgment." Based on these two provisions of law, the Attorney General argues that the direct victim restitution is therefore "collected by the court" within the meaning of section 1464, subdivision (a) and Government Code section 76000, subdivision (a). We do not agree. In a case such as this where the accused is sentenced to the penitentiary for two consecutive life terms plus 37 years, the actual deduction from prison wages and trust account deposits will be made by the Department of Corrections if the victim filed a claim with the Board of Control. We cannot equate issuance of writs execution and related creditor's remedies or being notified of a collection by the Department of Corrections with being the equivalent of a penalty or fine "imposed and collected by the courts for criminal offenses." (Gov. Code, § 76000, subd. (a); § 1464, subd. (a).) However, the problems with forcing the language in sections 1202.4, subdivision (i) and 2085.5, subdivision (b) into the context of actual collection of direct victim restitution does not end the matter.

There is no evidence in legislative committee reports that the Legislature intended that the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments be added to direct victim restitution. In the case of direct victim restitution where the defendant was sentenced to prison, that right did not accrue statutorily until 1986. The legislative history of the development of the 1986 law which for the first time mandated direct victim restitution in the case of a defendant sentenced to prison was described by the California Supreme Court in *People* v. *Broussard* (1993) 5 Cal.4th 1067, 1074 [22 Cal.Rptr.2d 278, 856 P.2d 1134] as follows: "Senator Gary Hart in 1986 proposed to add a new statute, Penal Code section 1202b, that would require trial courts to order restitution 'to the victim' (if the crime had a victim) in 'any case where a person is convicted of a crime and probation is denied.' (Sen. Bill No. 2404 (1985-1986 Reg. Sess.; hereafter SB 2404).) . . . [¶] After the Senate's adoption of SB 2404, the bill moved to the Assembly. There it was changed to provide for an amendment to section 13967 of the Government Code, rather than an addition of a new statute to the Penal Code, as originally contemplated. The proposed amendment to Government Code section 13967 retained those portions of the statute authorizing the imposition of a fine and penalty assessment. (See pp. 1072-1073, *ante*.) It added, however, subdivision (c), stating that when 'a victim has suffered *economic loss* as a result of the defendant's criminal conduct, and the defendant is denied probation, . . . the court shall order restitution to be paid to the victim.' (Italics added.) [¶] The Legislative Counsel's Digest explained SB 2404's purpose as follows: 'Existing law provides that in every case in which a person is convicted of a crime and is granted probation the court is required to order as a condition of

probation that he or she make restitution to the victim, if the crime involved a victim, or to the Restitution Fund, if the crime did not involve a victim. Existing law also provides that in any case in which a defendant is convicted of a felony the court is required to order the defendant to pay a restitution fine, which is deposited into the Restitution Fund, as specified. [¶] This bill would provide that in cases in which a victim has suffered *economic* loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court is required to order restitution to be paid to the victim, as specified.' (Legis. Counsel's Dig., Sen. Bill No. 2404, 4 Stats. 1986 (Reg. Sess.) Summary Dig., p. 557, italics added.) [¶] On September 30, 1986, SB 2404, as amended, was signed into law. (Stats. 1986, ch. 1438, pp. 5140-5141.)" (Original italics, fn. omitted.)

We have reviewed each of the legislative committee reports prepared in connection with the 1986 adoption of Senate Bill No. 2404 described by our Supreme Court in *Broussard*. None of those reports reflect any legislative intention that direct victim restitution in a case where the accused is sentenced to prison be the subject of section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments. (E.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 2404 (1985-1986 Reg. Sess.) as amended Apr. 1, 1986; Legislative Analyst, Analysis of Sen. Bill No. 2404 (1985-1986 Reg. Sess.) May 1, 1986; Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading (Sen. Bill No. 2404) May 6, 1986; Assem. Com. on Public Safety, Rep. on Sen. Bill No. 2404 (1985-1986 Reg. Sess.).) Further, the April 30, 1986, Department of Finance "Fiscal Analysis" of Senate Bill No. 2404 provided to both the Senate and Assembly prior to its passage did not indicate there would be any additional revenues provided to local government because the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments would be available as a funding source when direct victim restitution was imposed when the defendant was sentenced to prison. In fact, on April 30, 1986, the Department of Finance reported to the Legislature that there would be "No Fiscal Impact" through July 1, 1988. (Analysis by Dept. of Finance of Sen. Bill No. 2402 (1985-1986 Reg. Sess.) Apr. 30, 1986.) The absence of any indication in any committee reports that direct victim restitution when the defendant is sentenced to prison would result in section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments is persuasive evidence of the Legislature's intentions in this regard. Apart from the suggestion that the use of the word "penalty" in section 1464, subdivision (a) and Government Code section 76000, subdivision (a) evidenced an intent to require penalty assessments, the Attorney General has presented no documentary evidence of a legislative intention that penalty assessments are

applicable in a case of direct victim restitution where the defendant is sentenced to prison. (*People* v. *Eubanks* (1996) 14 Cal.4th 580, 591, fn. 3 [59 Cal.Rptr.2d 200, 927 P.2d 310] [judicial notice taken of legislative history related to statute in question]; *People* v. *Cruz* (1996) 13 Cal.4th 764, 773-774, fn. 5 [55 Cal.Rptr.2d 117, 919 P.2d 731] [legislative committee reports utilized to interpret statute].) Given the statutory language at issue as well as the pertinent legislative history, a forced reading of Government Code section 76000, subdivision (a) and section 1464, subdivision (a) so as to apply them to this case would contravene our duty to read civil and criminal statues in a "commonsense" fashion. (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified Dist.*, *supra*, 14 Cal.4th at p. 633; *Lungren* v. *Deukmejian*, *supra*, 45 Cal.3d at p. 735.)

One final note is in order concerning our prior decision in *People* v. *Martinez*, *supra*, 65 Cal.App.4th at page 1520, where we held that the Health and Safety Code section 11372.5, subdivision (a) drug laboratory fee which is statutorily defined as an increment of a fine was subject to section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments. The Attorney General relies on *Martinez* to support the argument the penalty assessments must be imposed on the direct victim restitution order in this case. However, the Health and Safety Code section 11372.5, subdivision (a) assessment is payable to the court. (Health & Saf. Code, §§ 11372.5, subd. (b); 11502.[4]) No such statutory enactment requiring payment to the court in a case where the defendant is sentenced to prison applies to direct victim restitution. Our prior decision in *Martinez* involving a Health and Safety Code section 11372.5, subdivision (a) laboratory fee is

---

[4]Health and Safety Code section 11372.5, subdivision (b) states in pertinent part: "The county treasurer shall maintain a criminalistics laboratories fund. The sum of fifty dollars ($50) shall be deposited into the fund for every conviction under Section 11350, 11351, 11351.5, 11352, 11355, 11358, 11359, 11361, 11363, 11364, 11368, 11375, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, 11382, 11383, 11390, 11391, or 11550, subdivision (a) or (c) of Section 11357, or subdivision (a) of Section 11360 of this code, or Section 4230 of the Business and Professions Code, in addition to fines, forfeitures, and other moneys which are transmitted by the courts to the county treasurer pursuant to Section 11502. The deposits shall be made prior to any transfer pursuant to Section 11502." Health and Safety Code section 11502 states: "All moneys, forfeited bail, or fines received by any court under this division shall as soon as practicable after the receipt thereof be deposited with the county treasurer of the county in which such court is situated. Amounts so deposited shall be paid at least once a month as follows: 75 percent to the State Treasurer by warrant of the county auditor drawn upon the requisition of the clerk or judge of said court to be deposited in the State Treasury on order of the State Controller; and 25 percent to the city treasurer of the city, if the offense occurred in a city, otherwise to the treasurer of the county in which the prosecution is conducted. [¶] Any money deposited in the State Treasury under the provisions of this section which is determined by the State Controller to have been erroneously deposited therein shall be refunded by him, subject to approval of the State Board of Control prior to the payment of such refund, out of any money in the State Treasury which is available by law for such purpose."

not controlling authority in the present case. In failing to impose the section 1464, subdivision (a) and Government Code section 76000, subdivision (a) penalty assessments on the direct victim restitution, the trial court did not commit any jurisdictional error.

IV.

The judgment is modified as follows. Defendant is sentenced to two consecutive life sentences for the kidnapping for robbery counts. The minimum parole eligibility date of each life sentence is 14 years each, consecutively. The determinate sentences for counts two and three are reduced to two years each without reference to the enhancements on those charges which are to remain as previously imposed. The abstract of judgment is modified to reflect: the minimum parole eligibility information for each life sentence; the corrected sentences of two years each on counts two and three which remain stayed pursuant to Penal Code section 654, subdivision (a); direct restitution to the victim was ordered pursuant to Penal Code section 1202.4, subdivision (f); and to include the fine imposed pursuant to Penal Code section 1202.45. Upon issuance of the remittitur, the clerk of the superior court is directed to forward a copy of the amended abstract of judgment to the California Department of Corrections. The judgment is affirmed in all other respects.

Armstrong, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied October 26, 1999, and the petitions of both appellant and respondent for review by the Supreme Court were denied January 19, 2000. Mosk, J., was of the opinion that the petitions should be granted.